UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
DENNIS SOLOMON,                )
       PLAINTIFF PRO SE        )
v.                             )    CIVIL ACTION NO.  1:20-cv-11894-JDL
FRANK FREDRICKSON,             )
MICHAEL WATERSTONE,            )
KAMALA HARRIS                  )
JOE BIDEN                      )
DOUGLAS WOLF,                  )    JURY TRIAL DEMANDED
VINCENT LECLERC                )
ET AL                          )
       DEFENDANTS              )
_____)
```

**PLAINTIFF'S OPPOSITION & MEMORANDUM TO DEFENDANT KENNEFICK
RULE 12(b)(6) MOTION TO DISMISS OF MARCH 4, 2021**

  This Plaintiff, Dennis J Solomon, opposes Defendant attorney Kennefick Motion to Dismiss under Rule 12(b)(6) of March 4, 2021 on the grounds that the Complaint avers in "short and plain" language that Defendant Kennifick's falsifications and "fraud upon the court" during his appearance on March 18, 2019 to unlawfully procure a default dismissal of this Plaintiff's Petition for Judicial Review, constitute  intentional overt acts of his unlawful intention to individually and conspiratorially deprive this Plaintiff of his Constitutional and civil rights actionable under 42 USC 1983, 42 USC 1985(b) and (c) and Massachusetts Law.

  In *Worcester v Holden*, 470 Mass 845 (2015), the Massachusetts Supreme stated that: "where a State must act quickly … post deprivation process satisfies the requirement of the Due Process Clause." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). …  In such circumstances, full pre-deprivation process is not required, provided "prompt post deprivation review is available for correction of administrative error." Id. at 13."  Here, Defendant Kennefick's intentional, fraudulent and overt acts were designed to deprive this Plaintiff of his Constitutional "Due Process" and caused substantial expense and injury which are neither redressed nor dependent on the disposition of the State Petition case.

1

**Massachusetts Law and Custom**

According the FBI's "Crime in the United States" report for 2019, the State of Maine had the lowest intentional homicide rate[1] in the United States despite the fact that Public Law 2015, Chapter 327 allows a person who is not otherwise prohibited from possessing a firearm to carry a concealed handgun in the State of Maine without a permit.  Those prohibited must have been convicted of crimes of violence, adjudicated insane, subject to abuse orders or similar due process and judicial review.  Maine will issue a License To Carry (LTC) permit for residents travelling out-of-state but it is not recognized by the State of Massachusetts, one of only six states which requires a firearm's permit for all firearms and the only one which confers "may issue" discretion on a general firearm's permit under a vague "suitability" standard.

Massachusetts and all States empower the police to immediately detain or arrest those who exhibit behaviors which threaten public safety and to seize all dangerous weapons in their possession.  A lessor course of action is an emergency suspensions of firearms license under the "Red Flag" or "Extreme Risk Protection Orders Act (ERPO)", Massachusetts Laws MGL c.140 §§ 131R-Y, which require the Licensing Authority to petition the Court, the Court would be require to "<u>within 10 days</u> … conduct a hearing" MGL 140 §§ 131S(a), or "<u>within 2 days</u>" if the individual's employment requires the use of a fireman.  Once reviewed by the Court, the ERPO expires in one year, unless renewed.

The Complaint avers that Canton Police Officer Moriarty received an order to investigate from Yarmouth Police on Friday evening, April 19, 2019, the first evening and Seder of Passover. A few hours later, on or about 2 AM Saturday morning, he interviewed this Plaintiff at Hebrew SeniorLife home in Canton, where he had attended the Seder with his 95-year old Mother, a resident, and seated adjacent from Massachusetts Governor Michael Dukakis and his extended family.  Following the interview, Officer Moriarty concluded and communicated that this Plaintiff was fully cooperative and posed no present or future danger to the safety of the community. Saturday, Sunday and early Monday passed uneventfully.  Neither Officer Moriarty nor the

---

[1] https://ucr.fbi.gov/crime-in-the-u.s/2019/crime-in-the-u.s.-2019 (retrieved 03/09/21)

2

Canton Police Chief considered it necessary to take immediate action or evoke the "Red Flag" laws.

On Monday, April 22, 2019, Yarmouth Chief of Police and Defendant Fredrickson, who made no attempt to directly interview or contact this Plaintiff, formally ordered Canton Police Officers to serve a written Notice of Suspension of LTC in person on this Plaintiff while preparing family lunch at Canton Hebrew SeniorLife complex.

This Complaint avers that this Plaintiff is legal resident of Yarmouth, and over the last thirty years held an LTC without incident of any sort, hosting Steven Grossman during his campaign for governor and other public event.  At all times, the Yarmouth Police and Defendant Fredrickson had this Plaintiff's current, active mobile phone number.

Of the options available for the suspension of a LTC under Massachusetts Law, the suspension by the licensing authority under the "suitability clause" of MGL c.140 §131(f) causes the greatest damage to the Licensee.  There is no automatic judicial review within two or ten days.  The Licensee must Petition for Judicial Review and bear the $195 Petition Filing Fee.  Normally, the Court is under no scheduling requirement and here set the hearing date of November 8, 2019, four months after the filing of the Petition.

Defendant Kennefick was aware that the Massachusetts Courts have not affirmed an LTC suspension or revocation under the "suitability" clause unless there is "clear and convincing" evidence of a relevant felony violence or negligence by the Licensee.  In Chief of Police *Worcester v Holden*, 470 Mass 845 (2015), Holden was arrested for assault and battery on his wife, who later withdrew the complaint.  The Chief revoked his LTC. The District Court restored Holden's LTC finding that the withdrawal of the complaint removed the "evidentiary support" for unsuitability.  The  Court overruled, finding that the basis for denial on the ground of unsuitability was Holden's "violent proclivities, anger management issues and poor decision-making" and on published estimates of the recidivism rate among domestic abusers. The standard the Court established for "unsuitability" was:

> "… it allows licensing authorities to keep firearms out of the hands of persons who are not categorically disqualified, e.g., convicted felons, but who nevertheless pose a palpable risk that they would not use a firearm responsibly if allowed to carry in public."

**Due Process Considerations**

In *Worcester v Holden*, 470 Mass 845 (2015), the Massachusetts Supreme Court addresses the Holden due process claims.

> *"Holden raises a number of procedural due process claims that we now address. First, he claims that G. L. c. 140, § 131 (f), is flawed because it does not provide for a pre-revocation or pre-suspension hearing before the licensing authority. Generally, such a hearing is required, but not always. The Supreme Court has recognized that "on many occasions . . . where a State must act quickly, or where it would be impractical to provide pre-deprivation process, post deprivation process satisfies the requirement of the Due Process Clause." Gilbert v. Homar, 520 U.S. 924, 930 (1997). … In such circumstances, full pre-deprivation process is not required, provided "prompt post deprivation review is available for correction of administrative error." Id. at 13."*

The Complaint avers that Defendant Kennefick, recognizing that there were no grounds for Defendant Fredrickson's suspension without pre-deprivation process, devised in desperation an intentional, fraudulent, unlawful and overt scheme designed to deprive this Plaintiff of his "prompt post deprivation review".

**FRCP Rule 11, MRCP 11, Duties Of All Members Of The Bar And Officers Of The Court**

As a practicing member of the Massachusetts Bar, Defendant Kennefick, and his attorney Bogaert owe a duty of professional care and competence to all in the Commonwealth, and are subject to the Mass. Supreme Court Rule 3:07: Rules of Professional Conduct, and in particular Preamble Paragraph 4 which reads in part:

'A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials" and Rule 3.3(a) <u>Candor to the Tribunal</u> which, similar to FRCP Rule 11, reads:

"A lawyer shall not knowingly:
(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
(2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; …"

Thus while Defendant Kennefick's representation of the Chief Fredrickson in his official capacity at the administrative review at the Court-scheduled hearing of November 8, 2019 would

4

have been proper and enjoyed litigation privilege, Defendant Kennefick's false and misleading statements of fact in support of his frivolous and devious 'Motion to Dismiss filed on October 15, 2019', and his false misleading statement of material facts in the service on this Plaintiff -- transforms, evidences and establishes the overt unlawful acts in furtherance of the interstate conspiracy with Defendants Waterstone and Moore including bribery, intimidation, threats of violence, grand theft, wire and mail fraud, and tampering with a witness and victim.   Moreover, Defendant Kennefick's frivolous and misleading Motion to Dismiss of October 15, 2019 can only be interpreted as an unlawful scheme to also defraud the Town of Yarmouth with false claims of necessary legal and other expenses.

There is a substantial dispute between the parties regarding the specific acts, facts, knowledge and motivations which is the province of a jury; and of the Law which requires substantial discovery and briefing – all beyond the scope of this Rule 12(b)(6) Motion.

The facts averred in the Complaint and those from the official District Court Docket (Fredrickson Defendants Exhibit B) for which Judicial Notice may be taken are:

**Massachusetts District Court Docket – Administrative Hearing No. 1925cv000242**
| | |
|---|---|
| 04-22-2019 | Defendant Fredrickson served Notice of Suspension of Plaintiff's LTC |
| 07-22-2019 | (Monday) Court Docket records Plaintiff's Petition for Review |
| 10-01-2019 | Court sets Hearing Date: November 1, 2019 |
| 10-15-2019 | Defendant Kennefick enters an Appearance in this case |
| 10-15-2019 | Defendant Kennefick files a Motion to Dismiss - Petition was untimely Hearing Date for October 18, 2019: No Rule 6(b) Consideration |
| 10-18-2019 | Defendant Kennefick appears and Court grants Motion on Default |
| 10-18-2019 | Clerk enters Judgment of Dismissal: Case Status - Disposed |
| 10-29-2019 | Petitioner Solomon Files Motion to Set Aside Default |

**No State Court Judgement "Lost" To Overturn**

The Barnstable Court Docket (Defendant's Exhibit B) related to the Plaintiff's Petition for Judicial Review of July 22, 2019 shows that current case status is <u>DISPOSED</u> and that judgement of <u>DISMISSAL</u> was entered on November 18, 2019.

The Massachusetts District Court entered no finding regarding the 'suitability' of the Plaintiff nor is it relevant to issue of whether Defendant Kennefick, Fredrickson and Magnuson

5

acts under the color of State Law were part of interstate=conspiracy to deprive this Plaintiff of his Federally protected civil rights.

Furthermore, a State finding of suitability is not relevant to the constitutionality of the "suitability" statute as exercised by the Defendants and Civil Rights raised in the present case. . There is no duplicative, relevant or related case is pending in the Massachusetts courts.

### Inapplicability of the Rooker-Feldman Doctrine

The present Complaint avers "bad faith, harassment, and other unusual circumstances" and "overt acts" aiding and abetting an interstate conspiracy by Defendant Kennefick, which stand independently from any issue of the Constitutionality of the "suitability" clause of Massachusetts Firearms Laws. Moreover, there is no State case of any sort filed by this Plaintiff which pleads against Defendant Kennefick, Fredrickson or Magnuson in their personal capacity. Furthermore, a final Judgement of dismissal issued on November 18, 2019 on this Plaintiff's Petition to Judicial Review of the LTC.  No ruling issued regarding the suitability of this Plaintiff. With relevance to the claims against Defendant Kennefick in his personal capacity, the Rooker-Feldman Doctrine does not apply.

### Breach of Duty of Care: Massachusetts Professional Rules of Conduct

Defendant Kennefick argues that he owes no duty to this Plaintiff.  As a practicing member of the Massachusetts Bar, Defendant Kennefick, and his attorney Bogaert owe a duty of professional care and competence to all in the Commonwealth and are subject to the Mass. Supreme Court Rule 3:07: Rules of Professional Conduct, requiring legitimacy and prohibiting harassment and intimidation.  The Complaint avers that Defendant Kennefick scheme unlawfully, by "Fraud on the Court" and in violation of the Rules of Professional Conduct to obstruct justice and the due processes of this Plaintiff.  Among the averments in the Complaint are that on November 18, 2019, Defendant Kennefick presented falsely presented to Court the legitimacy and compliance with Law of the "Notice to the Opposing Party" and the grounds for dismissal (untimely filing of the petition) – Service was mailed on November 11, 2019.

Whereas an actionable claim is averred, and the Defendant disputes the averments and obvious facts, dismissal under Rule 12(b)(6) is not warranted.

**No Absolute Litigation Privilege:**

Defendant Kennefick relies on the *Doe Vs. Nutter, McClennen & Fish*, 41 Mass. App. Ct. 137 (1996) ruling related to a demand letter which the Court found was absolutely privileged as a communication by an attorney. But the same Court goes further and endorses Rule 11 Sanctions against counsel noting that Rule 11 mandates that the attorney "has read the pleading; that to the best of his knowledge, information, and belief there is a good ground to support it; and that it is not interposed for delay. [Note 6] "Good ground" requires that the pleadings be based on "reasonable inquiry and an absence of bad faith." Bird v. Bird, 24 Mass. App. Ct. 362 , 368 (1987); New England Allbank for Savings v. Rouleau 28 Mass. App. Ct. 135 , 141 (1989); Nemeroff v. Abelson, 620 F.2d 339, 350 (2d Cir. 1980). See also Vairo, Rule 11: A Critical Analysis, 118 F.R.D. 189, 193 (1988).

The present Complaint avers Defendant Kennefick's bad faith, intent to delay and other overt unlawful acts for his personal unlawful enrichment and in furtherance of the interstate conspiracy.

**Not in Compliance with Mass. Rules of Civil Procedure**

Defendant Kennefick asserts that service of the Motion to Dismiss was in compliance with MRCP Rule 6(c) which requires service seven days prior to a motion hearing. In his Memorandum, he states that "it was complete upon mailing it on October 10, 2019." MRCP Rule 6(d) states that:

> "(d) Additional Time After Service by Mail. Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other papers upon him and the notice or paper is served upon him by mail, 3 days shall be added to the prescribed period."

One can only conclude that Defendant Kennefick's choice of hearing date, appearance and request for a default judgement on October 18, 2019, accompanied false and misleading assertions of fact before the Court, constitute unlawful "Fraud upon the Court"; done in bad faith; intentionally designed personally enrich himself and to delay, harass and endanger the Plaintiff; and aid and abet the interstate conspiracy and ongoing corrupt enterprise.

**Summary**

The Complaint avers in "simple and concise" language that Defendant Kennefick intentionally schemed and conspired to interfere with and deprive this Plaintiff of his 1st, 2nd, 7th, and 14th Amendment and other rights, by deliberate "fraud upon the court" to obtain default dismissal on November 18, 2019, depriving this Plaintiff of Constitutional 'due process' right to *"prompt post deprivation review",* to be secure in his person and property and other rights.

There are no previous or pending "duplicative actions" which seeks redress for and avers that Defendants Kennefick, Fredrickson and Magnuson, personally joined, aided or abetted the interstate conspiracy and corrupt enterprise engaged the unlawful predicate acts including those under the color of state law and other violations -- motivated by religious bias, and vengeance for the success of this Plaintiff's Aunt and Uncle Dorothy and Walter Horwitz participation in the exposure of Nazi collaborators and war criminals smuggled into the United States, Long Beach and San Pedro, California and the Americas by the Catholic Church "ratlines", and the recovery of stolen Holocaust assets. (See Alperin v. Vatican Bank, 284 F.3d 1114 (9th Cir. 2002).  These reasonably-plead averments must be 'considered as true' for the purposes of Defendant Kennefick's Rule 12(b)(6) Motion.

Of course, Defendants Kennefick, Fredrickson and Magnuson have an alternative course of action and may propose reinstating this Plaintiff's LTC, mediating the damages caused by their unlawful actions, and seriously consider and assist in compelling the interview of notary Doris Tucker under oath regarding the actual date she signed the Horwitz Estate Jurat, thereby causing substantial injury to this Plaintiff, the Massachusetts College of Art - the alma mater of Boston-born Walter Horwitz WWII USN, and the United States Navy Chaplain's Fund.  These Massachusetts Defendants and this Court, in discharge of their official responsibilities in the administration of justice, may wish to understand why the Los Angeles Chief of Police and the Dean of Loyola Marymount Law School so desperately and unlawful scheme to avoid answering this simple question.

**For the aforementioned reasons**, this Plaintiff pro se respectfully requests this honorable Court deny Defendant Kennefick's Rule 12(b)(6) Motion in its entirety. If the Court finds that any of the challenged Claims are not stated with the necessary "fair notice" or adequate "grounds", this Plaintiff pro se requests this Court identify the specific deficiency and grant leave to amend the Complaint.

Verified and respectfully submitted on March 15, 2021:

/Dennis Solomon/

Dennis Solomon, Petitioner pro se
75 North Main Street #552
Randolph, MA 02368
Phone: 508-394-9221   Fax: 617 890 1947
svwolfpm@gmail.com

### CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I certify that responsive participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/Dennis Solomon/

Dennis Solomon, Plaintiff pro se